DREW, J.
_]jFrom a judgment rejecting her demands for damages against the landlord which had evicted her, Mary Hart appealed.
Hart sued in proper person in 2011 to recover her deposit, her moving expenses, and her damages for pain and suffering, all based upon allegations that:
The landlord’s submission of a negative credit report prevented her from being able to rent another residence to house her children, which inability resulted in her mother getting custody of the ehil-dren, further resulting in Hart having to pay child support to her mother.
Correspondence in the record showed documentation of Hart’s debt amounting to $1,544.69 was reported to Experian.
This dispute was the subject of an earlier judgment of eviction dated January 19, 2010, from which plaintiff did not appeal.[1]
For the following reasons, the judgment rejecting her claim for damages is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND
The lease signed by Mary Hart and Shaun Natt (Hart’s boyfriend) reveals that they rented the apartment on a month-to-month basis beginning October 21, 2009, for $585.00 per month. The lessor was Sig Masur & Sons, Inc. d/b/a Masur-Dean Properties. Jonna[2] Scott, Masur-Dean’s property manager, conducted the transaction with Hart and Natt. The rent was due on the first of each month.
12After Hart, Natt, and four of her children moved into the Masur-Dean apartment in late October 2009, the property manager, Scott, sent Hart and Natt a letter dated November 19, 2009, stating that complaints had been made about her children playing on the stairs while waiting for the school bus. The lease prohibited anyone from playing or hanging out on the stairs at any time. The lessees were instructed that they were required to wait for the bus with the children either inside the apartment or outside. Additionally, the property manager received complaints that more children lived in the apartment *32 than were listed on the lease applications, another violation. Lessees were asked to come in to discuss the issue. At that meeting, Hart stated that Scott told her she had to vacate the apartment.
On December 1, 2009, Scott sent Hart and Natt a letter stating they had previously been asked to vacate the apartment by November 30, 2009. Failure to turn in the keys by the next morning would result in commencement of eviction.
On December 2, 2009, the Monroe City Marshal delivered an eviction notice to Natt, Hart, and all other occupants directing them to vacate the apartment in five days, with failure to vacate resulting in eviction proceedings against them. Nonetheless, attorneys for the parties attempted to resolve the dispute amicably.
On December 18, 2009, the property manager sent Hart and Natt a letter instructing them to provide the names and ages of all children residing in the apartment. The manager noted that moving additional persons into the apartment was a clear violation of the lease. The lessees were given |suntil December 21, 2009, to supply to the property management the names and ages of the children residing in Hart’s apartment along with custody documentation for those children. Hart was informed that a failure to respond timely would result in the setting of a court hearing on the lease violation.
Even then, through attorneys representing Masur-Dean and Hart, an effort was made to resolve the dispute. However, a proposed settlement dated January 6, 2010, was never executed. On January 11, 2010, the rule of eviction was filed in the Monroe City Court and the matter was set for hearing on January 19, 2010, the date on which the judgment evicting Hart and Natt was signed.
On February 25, 2011, Mary Hart sued the property manager, Scott, seeking damages resulting from a credit report of the eviction that was made to Experian. Hart sought $2,000 in pain and suffering because she allegedly could not rent another apartment due to the credit report and because she was required to pay child support to her mother. Additionally, Hart sought moving expenses and a return of her deposit on the apartment.
In its answer and reconventional demand, Masur-Dean asserted that Jonna Scott (Becton, at the time of trial) was its employee. Masur-Dean stated that Hart and Natt leased the apartment and failed to pay rent for December 2009 and January 2010 totaling $1,170.00. Additionally, Masur-Dean asked for $125.00, the amount of the costs in the eviction suit, along with $249.69 in attorney’s fees under La. R.S. 9:3259. Answering, Hart |4asserted that her rent was due on the fifth and that she paid it on the second of the month.
Witnesses at the trial on May 18, 2011, were Hart and Scott. The matter was taken under advisement. The judgment containing reasons rejecting Hart’s monetary demands was signed and filed on July 7, 2011. Hart then appealed.
TESTIMONY
Hart testified she and her children resided with her husband in Winnsboro until 2009, when the couple separated. She and the children then moved into her mother’s home in Winnsboro. At the end of October 2009, Hart and four of her children (ages 9, 8, 7, and 5) along with her boyfriend, Natt, moved into the Masur-Dean apartment. Due to complaints about her children, Hart was informed by Scott on November 20 that she had to vacate the apartment. Eviction proceedings commenced in December culminating in the *33 January 19, 2010, eviction judgment. The maintenance man from the Masur-Dean apartment informed Hart that she had missed court and had to remove her things from the apartment.
Hart testified that she paid her deposit and rent for November 2009 after which she received the letter (dated November 19, 2009) from Masur-Dean with the complaints about her children. Stating she had seven children (at that time), Hart testified she had four school-age children residing with her. The lease applications in the record listed three children as occupants. On December 2, Hart received the eviction notice which the | ¿Monroe City Marshal placed upon her door. Hart’s attempts to pay the rent thereafter were rejected by Scott, since the eviction process had begun.
Hart’s testimony was that she had missed the January 19 court date because she had misplaced the papers and did not remember to attend court. In later testimony, she stated transportation issues prevented her from attending court.
When Hart vacated the premises, she and the children resided briefly at her mother’s house. However, the two women could not get along and her mother informed Hart she could not live there. Hart signed custody of the children back over to her mother. Subsequently, Hart was ordered to pay child support. At trial, Hart’s mother had custody of six of Hart’s eight children. When the “child support people” learned Hart no longer resided with her mother, she was required to pay $288.75 per month beginning in October 2010 as child support for the children in her mother’s custody.
According to Hart, she tried to rent another apartment months later and learned that information about the “broken lease” had been placed upon her credit report, making her ineligible to obtain another apartment.
On cross-examination, Hart acknowledged the lease was on a month-to-month basis and that the lessor had the right to terminate the month-to-month lease 10 days before the end of the month. Hart stated she tried to pay rent for December which was refused and she admitted in pleadings and testimony that she vacated the apartment on January 19, the day the eviction judgment was signed. Hart acknowledged three children were listed on the lease applications and that four children were living in the apartment.
|fiJonna Scott testified for the defense that she was the Masur-Dean property manager and that she rented the apartment to Hart. The lease applications from Hart and Natt, her boyfriend, both listed Hart, the boyfriend, and three children as residents of the apartment. Scott identified the lease paperwork and the letters sent to Hart informing her of complaints about the children and directing her to vacate the premises. Also identified was the eviction notice from the Monroe City Marshal.
Scott also identified the November 29, 2010, letter sent to Hart showing the calculations of the $1,544.69 reported to Ex-perian including the rent due for December and January, along with the attorney’s fees, court costs, and late fees. The letter erroneously states, “This is the amount given to the judge and awarded in the judgment.” Scott testified the report to the credit agency was a standard practice when money is owed Masur-Dean.
An attempt to negotiate a settlement between Masur-Dean and Hart was undertaken by counsel for the litigants. Scott identified the unsigned settlement agreement on Masur-Dean letterhead and dated January 6, 2010. The proposed settlement was that Hart and Natt pay the *34 rent for December 2009 and January 2010 and vacate no later than January 31, 2010. Following a satisfactory inspection on February 1, 2010, the landlord agreed to refund $250 of the deposit to the lessees. Scott stated Hart failed to keep the agreement reached by attorneys. Therefore, the rule for eviction was scheduled for a court date.
Hart’s only objection to the admission of Masur-Dean’s documentary evidence was to the unsigned compromise, which was admitted over Hart’s |7objection, for the purpose of establishing there was an attempt to settle with Hart. Hart stated that she never saw the proposed settlement document and did not know about it.
REASONS AND JUDGMENT
The trial court noted that the proper defendant was the intervenor, Masur-Dean, of which Scott was an employee. Hart’s claim was rejected in toto with the trial court noting a proper eviction was signed on January 19, 2010. An exhibit placed into the record reflected the invoices forming the basis for the filing with Experian. Hart violated the lease by having more children living in the apartment than were listed on the applications. Since the eviction proceedings were underway, Masur-Dean did not accept rent for December 2009 and January 2010.
The trial court observed that Hart provided no proof via medical bills that she sustained damage. Reviewing the contentious relationship between Hart and Mas-ur-Dean, the court observed that, although it was unfortunate that Masur-Dean made the negative report on Hart’s credit, the lessor was within its rights to do so. Costs were divided between the parties.
DISCUSSION
The trial court judgment was silent on Masur-Dean’s reconventional demands against Hart for a total of $1,544.69.[3] When a judgment is silent as to a demand, it is presumed that the demand has been denied. Bell Foundry Co. v. Lonnie McCurry’s Four Wheel Drive Center, Inc., 46,553 (La.App.2d Cir.10/5/11), 75 So.3d 529, writ denied, 2011-2467 (La|1/20/12),8 78 So.3d 145. Only Hart appealed; Mas-ur-Dean did not appeal or answer plaintiffs appeal. When a party does not appeal or answer an appeal, that party may not seek any modification or reversal of the judgment. La. C.C.P. art. 2133; Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191. Therefore, the monetary relief sought in Masur-Dean’s reconventional demand is not before this court.
Unappealed, the eviction judgment has long been final. Hart’s complaints about alleged defects in the eviction proceedings are barred by that judgment. Even if we were to examine the merits, a cursory examination of the record demonstrates the baseless nature of her complaints.
The Monroe City Marshal placed the formal notice of eviction on Hart’s apartment door on December 2, 2009. Hart asserted that the standard form eviction notice used by the Monroe City Marshal stated the reason was “you are in arrears with the payment of rent for said accommodations, and an undesirable tenant.” Hart stated that she tendered the December rent which Masur-Dean refused to accept because Hart had been instructed to vacate the apartment. Scott corroborated this. Scott also testified that by January 2010 when the eviction rule was *35 filed, Hart continued to occupy the apartment without payment of rent for December and January.
As to Hart’s violation of the lease, the lease agreement provided that the apartment was to be occupied only by tenant and dependents listed on the applications. Another of Hart’s assertions was there was no proof ^presented that she had more children in the apartment than were listed on the lease. Scott identified the applications of Hart and Natt that listed three children as residents. That issue is resolved by Hart’s own testimony admitting that four of her children resided in the apartment.
These explanations on the merits are not necessary to the resolution of this matter but are included for the benefit of the appellant, who is proceeding in proper person.
• The terms of the lease itself belie Hart’s complaint about the unrefunded $300 damage deposit which was subject to the automatic deduction of the $50 cleaning fee and the cost of any necessary repairs. The remainder of the deposit was not refundable unless the tenant occupied the apartment for a full 12 months. Hart stated she moved into the apartment at the end of October 2009 and vacated the premises on January 19, 2010. Under the terms of the lease, that portion of which was initialed by Hart and Natt, the deposit was not refundable.
• No judgment casting Hart with paying Masur-Dean’s court courts, fees, and attorney’s fees is before this court.
• Hart’s complaint that Masur-Dean reported to Experian that Hart owed rent money for the entire month of January is also addressed by the lease agreement itself which stated that rent would not be prorated if the tenant vacated the apartment during the month.
Hart correctly noted in brief that her action for damages arising out of what she contends was a wrongful eviction is not barred by the eviction judgment. In Horacek v. Watson, 2006-210 (La.App. 3d Cir.7/5/06), 934 So.2d 908, the court reversed the trial court’s judgment sustaining an exception of res judicata in a lessee’s action for damages arising out of an eviction. Like this dispute, the Horacek eviction action was filed in a summary proceeding via a rule to show cause in the city court. The lessee’s subsequent suit for damages required a suit by ordinary process and the |inrequest for damages was not barred by res judicata. Horacek, supra. In addition to the different procedural vehicles required to pursue the eviction and Hart’s claim for damages, res judicata would not be applicable to Hart’s damage claim, since the issue about the negative report had not arisen at the time of the eviction judgment.
After listening to Hart’s allegations, testimony, and documents placed into the record, the trial court correctly found that Hart had failed to prove a wrongful eviction or that she had sustained any damages such as pain and suffering. She offered nothing to substantiate her assertions of moving expenses. Her pain and suffering from her own testimony appeared to consist primarily of her anger at having to pay child support to her mother, who assumed custody of six (including the four who lived in the Masur-Dean apartment) of her eight children. Hart made no showing of any defects in the eviction proceedings and took no appeal therefrom barring her complaints about those proceedings. Her allegations that she was prevented from renting another apartment due to the report were unsupported.
*36 DECREE
Finding no clear wrong or manifest error in the trial court’s decision rejecting Hart’s claims for damages, we will not disturb the judgment which was within the trial court’s discretion.
With costs of this appeal assessed against appellant, Mary Hart, the judgment is AFFIRMED.

. A Civil Deputy Clerk of Court, Monroe City Court, has furnished to this court a certificate establishing that the January 19, 2010, judgment of eviction is final and that no appeal or other action seeking review or reversal of the judgment was taken.

. Although referred to in the record and pleadings as "Joanna Scott,” Ms. Scott testified and signed on documents placed into evidence as Jonna Scott.

. Included were rent for December 2009 and January 2010 totaling $1,170.00, $125.00 in court costs in the eviction suit, and $249.69 in attorney's fees.